**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **FATIMAH SIDDIQUI,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 13-1080** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM OPINION GRANTING PLAINTIFF'S**
**ALTERNATIVE MOTION FOR REMAND**

Fatimah Siddiqui ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment or Alternative Motion for Remand (ECF No. 18) and Defendant's Motion for Summary Judgment (ECF No. 20).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's Alternative Motion for Remand (ECF No. 18) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1982, has a GED, and previously worked as a barista/cashier, lab technician, waitress, photographer, customer representative, debt collector, and patient registrar. R. at 24, 102, 356-57.  Plaintiff applied for DIB protectively on April 2, 2009, and for SSI on April 23, 2009, alleging disability beginning on April 18, 2008, due to depression, bipolar disorder, and anxiety.  R. at 15, 58-65, 99, 124.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 27-37.  On October 31, 2011, ALJ Larry K. Banks held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified. R. at 352-87.  On January 25, 2012, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of April 18, 2008, through the date of the decision.  R. at 12-26.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on February 8, 2013.  R. at 4-6, 10.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On April 11, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

**A.    Mikhael Taller, M.D.**

On August 5, 2009, Plaintiff underwent a consultative psychiatric evaluation by Dr.

Taller, which the ALJ summarized in his decision:

> In a psychiatric report, dated August 5, 2009, Mikhael Taller, M.D.,
> diagnosed [Plaintiff] with having mood disorder and personality disorder.
> [Plaintiff] alleged depressive symptoms, such as depression, anxious[]crying
> spells, hopelessness, and helplessness.  [Plaintiff] also alleged that she had a
> short-temper and that she did not get along with other people.

R. at 18 (citing R. at 227-35).  According to the ALJ, Dr. Taller

> reported on August 5, 2009 that [Plaintiff] had moderate reduction in her mental
> capacities.  [Plaintiff] had no psychomotor agitations or retardation.  [Plaintiff]
> denied feelings of being suicidal or homicidal.  [Plaintiff] did not have auditory or
> visual hallucinations.  She had no delusional thoughts.  She was oriented to
> person, place and time.  [Plaintiff] had no loosening of thoughts.  [Plaintiff]
> displayed good memory.  Her insight and judgment were both fair.  However,
> [Plaintiff] did have moderate mental limitations with low self-esteem, low interest
> level and poor sleep habits.
>
> In regard to her activities of daily living, Mikhael Taller, M.D., stated that
> [Plaintiff] had mild to moderate mental limitations.  [Plaintiff] reported that she
> was able to care for her personal needs.  [Plaintiff] noted that she was able to go
> to public places without having problems.  [Plaintiff] stated that she was able to
> understand and follow simple instructions.  Overall, Mikhael Taller, M.D.,
> reported that [Plaintiff] had moderate mental limitations.

R. at 21 (citation omitted) (citing R. at 227-35).

**B.    State Agency Consultants**

On August 11, 2009, F. Ewell, Ph.D., evaluated on a psychiatric review technique form

("PRTF") Plaintiff's mental impairments under paragraph B of Listings 12.04 and 12.08 relating

to affective disorders and personality disorders.  R. at 240-52.  Dr. Ewell opined that Plaintiff's

mood disorder, bipolar disorder, major depressive disorder, and personality disorder caused her

to experience (1) moderate restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration.  R. at 243, 246 249.  Dr. Ewell did not find evidence to establish the presence of the criteria under paragraph C of these listed impairments.  R. at 250.  Dr. Ewell thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 236-39) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (9) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and to (10) respond appropriately to changes in the work setting.  Plaintiff otherwise was not significantly limited.  R. at 236-37.  Dr. Ewell's RFC assessment thus provided:

> Has moderate restrictions in activities of daily living.  Sometimes neglects personal care.  Her mother often cares for her children.
>
> Has moderate social restrictions.  Sometimes confrontational with others.
>
> Has moderate restrictions in concentration, persistence, and pace due to psychiatric symptoms.
>
> All would most likely improve with consistent and adequate mental health care.  Maintains ability to perform tasks.

R. at 238.  On August 12, 2010, another state agency consultant, Aroon Suansilppongse, M.D.,

affirmed Dr. Ewell's determination.  R. at 307.

## C.      Shakuntala Dhir, M.D.

The ALJ stated in his decision that Dr. Dhir

> reported on July 13, 2010, that [Plaintiff] had moderate mental limitations.
> [Plaintiff] had no verbal or sexual abuse growing up as a child.  Her mood was
> euthymic.  Her affect was broad range.  [Plaintiff] displayed normal emotional
> reactions.  Her speech was regular in rate and rhythm.  [Plaintiff] demonstrated
> goal-oriented thought processes.  [Plaintiff] had no formal or perceptual thoughts
> [sic] disorders.  [Plaintiff] had a good fund of knowledge.  She demonstrated an
> average intelligence.  Her social interaction was not affected.  Additionally,
> [Plaintiff] stated that she no longer needed medications for her depression because
> the medications made her feel worse.  [Plaintiff] stated that she had no other
> limitations from physical impairments, such as from diabetes, heart disease,
> arthritis, degenerative disc disease, fibromyalgia, thyroid problems or asthma.
> Although, [Plaintiff] stated that she had poor concentration.
>
>          In regard to her activities of daily living, Shakuntala Dhir, M.D., stated
> that [Plaintiff] had mild to moderate mental limitations.  [Plaintiff] reported that
> she was able to care for her personal needs.  [Plaintiff] was able to perform her
> own personal shopping for groceries, clothes and household needs.  [Plaintiff]
> noted that she was able to go [to] public places without having problems.
> [Plaintiff] was able to carry out a normal day's activities on an independent and
> sustainable basis.  [Plaintiff] stated that she was able to understand and follow
> simple instructions.  Overall, Shakuntala Dhir, M.D., reported that [Plaintiff] had
> moderate mental limitations.

R. at 21 (citations omitted) (citing R. at 278-91).

## D.      Contemporary Therapeutic Services, Inc.

The ALJ noted the following in his decision:

> Hilo Find, M.D., reported that [Plaintiff] had moderate reduction in her mental
> capacities.    At times, [Plaintiff] was non-compliant with her medications.
> Although, when she was compliant with her medications, [Plaintiff] experienced
> relatively normal mental limitations.  Her thought content was good.  [Plaintiff]
> had never been physically abused.  Her affect was appropriate.  [Plaintiff]
> displayed no suicidal or homicidal thoughts.  She had no delusional thoughts.  She
> was oriented to person, place and time.  She was logical.  Her speech was
> articulate.  Her Global Assessment of Functioning [GAF] score of 55 would

indicate an individual that had moderate mental limitations and who would be able to engage in work-related activities.

R. at 21-22 (citing R. at 257-77, 313-28).[2]

**E.     Plaintiff's Testimony**

The ALJ noted in his decision Plaintiff's allegations:

> [Plaintiff] stated, which is supported by a Function Report dated June 17, 2009[,] and other third party report, that, with affective disorders, personality disorder and anxiety disorder, she has, from the date of alleged onset, been able to do the following: get the children ready for school, cooks, does light household duties such as doing the laundry, ironing, and dusting[,] dress herself, bathes, cooks, watches television, and reads.  Additionally, [Plaintiff] reported that she was able to care for her personal needs.  [Plaintiff] noted that she was able to go [to] public places without having problems.  [Plaintiff] stated that she was able to understand and follow simple instructions. . . .

> . . . Even though, [Plaintiff] stated that she did like [sic] being around people, [Plaintiff] testified at the hearing that she had no problems with taking the subway and bus to get to the hearing.  She had no problem with dealing with or interacting with the people on the subway or bus.  Although, [Plaintiff] reported that she did not like dealing with people, [Plaintiff] testified that she worked at places where she was in constant contact with people, such [as] Budget rental car, debt collector and a barrister [sic] at a coffee place.

R. at 22-23 (citation omitted); *see* R. at 356-83.

**F.     VE Testimony**

According to the VE, a hypothetical person with Plaintiff's same age, education, and

work experience could perform Plaintiff's past work as a lab technician if that person could

---

[2] The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) [hereinafter *DSM-IV-TR*].  A GAF rating between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).  *Id.* at 34.  The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

perform exertional activity at all levels but had mild difficulties in daily activities, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace that resulted in a limitation to performing simple, routine, and unskilled tasks involving neither significant stress, production-line work, nor more than minimum contact with co-workers, supervisors, or the public. R. at 383-84. If that person could not perform Plaintiff's past relevant work, however, other light,[3] unskilled jobs that the person could do include packer and packaging worker, bench worker, and housekeeper. R. at 384-85. If that person instead had marked difficulties in social functioning; marked difficulties in concentration, persistence, or pace; or marked limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, then the person could not perform any work. R. at 385-86.

### III

### Summary of ALJ's Decision

On January 25, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of April 18, 2008; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

perform other work in the national economy, such as a packer/packaging worker, bench worker, or housekeeper.  R. at 17-25.  The ALJ accordingly found that she was not disabled from April 18, 2008, through the date of the decision.  R. at 26.

In so finding, the ALJ found that Plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations.  [Plaintiff] has moderate difficulties in daily activities.  [Plaintiff] has moderate difficulties in social functioning and in concentration, persistence or pace resulting in being limited to performing unskilled tasks, not involving significant stress [exclude production line work], and involving no more than minimal contact with co-workers, supervisors or the public.

R. at 20.  In doing so, the ALJ afforded "greater weight" to the opinions of Drs. Taller, Dhir, and Ewell with regard to the nature and severity of Plaintiff's impairments because each of these opinions "is supported by objective medical evidence, and is consistent with the record as a whole."  R. at 23-24.  "Overall, [Plaintiff] retained the capacity to perform work-related tasks from a mental health standpoint perspective."  R. at 22.

The ALJ found that Plaintiff's "admitted activities and functional capabilities are inconsistent with her allegations of totally disabling limitations, and support the conclusion that she can do at least unskilled work at all exertional levels within the limitations contained in her" RFC.  R. at 23.  "Although [Plaintiff] has alleged various side effects from the use of medications, the medical evidence of record does not corroborate those allegations."  R. at 23.  "[T]he assessments from [Plaintiff's] treating and examining physicians showed that [Plaintiff] has mild pain and a moderate reduction in her mental capacities."  R. at 23.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can

be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work

9

activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42

U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling 96-8p.[5]  Pl.'s Mem. Supp. Mot. Summ. J. 3-11, ECF No. 18-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)).  Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work.  *Id.* at 5.  In particular, she asserts that the ALJ failed to follow the

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

special technique for analyzing mental impairments under 20 C.F.R. §§ 404.1520a and 416.920a.
*Id.* at 5-7. Plaintiff then contends that the ALJ failed to consider properly evidence of the state
agency consultant's summary conclusions expressed on the form completed as part of the
consultant's mental RFC assessment. *Id.* at 7-8. Plaintiff also maintains that the ALJ either
mischaracterized or ignored the evidence of record, including the findings of Drs. Dhir and
Taller and the evidence from Contemporary Therapeutic Services. *Id.* at 8-10. Plaintiff finally
asserts that the ALJ erroneously assessed her subjective complaints. *Id.* at 11-15.

Plaintiff first contends that the ALJ failed to follow the special technique (the psychiatric
review technique or "PRT") outlined in 20 C.F.R. §§ 404.1520a and 416.920a for evaluating
mental impairments at steps two and three of the sequential evaluation process. *Id.* at 5-7. In
addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R.
§§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing
evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These
regulations require application of the PRT at the second and third steps of the five-step
framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of
administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the
reviewing authority to determine first whether the claimant has a "medically determinable mental
impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an
impairment, then the reviewing authority must "rate the degree of functional limitation resulting
from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2),
416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living;
(2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of
decomposition. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the

degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

When a claimant has presented a colorable claim of mental impairment, the ALJ is required "to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (per curiam)); *see* 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). *But see Pepper v. Colvin*, 712 F.3d 351, 365-67 (7th Cir. 2013) (under some circumstances, failure to use explicitly special technique may be harmless error); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009) (holding that "the special technique of § 404.1520a does not confer such an 'important procedural safeguard' upon claimants that an ALJ's failure to rate the B criteria will rarely be harmless"). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)). "In other words, the regulations contemplate that written decisions at the ALJ and Appeals Council levels should

contain a 'narrative rationale,' instead of the 'checklist of . . . conclusions' found in a PRTF." *Keyser*, 648 F.3d at 725 (alteration in original).

Plaintiff maintains that, although the ALJ rated the degree of functional limitation from her mental impairments, the ALJ "failed to explain how he arrived at these conclusions, failed to consider all relevant and available clinical signs and laboratory findings, the effects of [her] symptoms," and the effect of certain factors on her functioning outlined in 20 C.F.R. §§ 404.1520a(c)(1) and 416.920a(c)(1). Pl.'s Mem. Supp. Mot. Summ. J. 7, ECF No. 18-1. As the Commissioner points out, however, the ALJ discussed the evidence in support of his findings (R. at 18-19) and the basis for those findings (R. at 21-22). Thus, Plaintiff's contention that the ALJ failed to comply with 20 C.F.R. §§ 404.1520a and 416.920a is without merit.

Plaintiff next contends that the ALJ failed to consider properly pertinent evidence by failing to include Dr. Ewell's functional limitations found in the "summary conclusions" of Section I of the form completed by Dr. Ewell in assessing her mental RFC assessment (R. at 236-37). Pl.'s Mem. Supp. Mot. Summ. J. 7-8, ECF No. 18-1. "However, the relevant portion of the [consultants'] opinions is not Section I, which sets forth a series of 'check the box' rankings, but Section III, which provides a detailed narrative functional capacity assessment." *Blum v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-12-1833, 2013 WL 2902682, at *2 (D. Md. June 11, 2013). "Because Section I does not include the requisite level of detail to inform the ALJ's opinion, an ALJ need not address each of the Section I limitations." *Id.* Thus, Plaintiff's assertion here is unavailing as well.

Plaintiff also contends that the ALJ mischaracterized the evidence of record and failed to explain his resolution of the conflict between his conclusion that she had only moderate limitations and Dr. Dhir's conclusion in July 2010 that she had serious limitations based on the

doctor's GAF rating of 50 (R. at 283), which indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV-TR*, *supra* note 2, at 34; *see Martise v. Astrue*, 641 F.3d 909, 917 n.5 (8th Cir. 2011); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).  Plaintiff also maintains that the ALJ did not consider evidence of a GAF rating of 50 in October 2009 and June 2011 found in records from Contemporary Therapeutic Services (R. at 264, 328).

"While . . . the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' the GAF scores may still be used to assist the ALJ in assessing the level of a claimant's functioning." *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010) (citation omitted).  However, "GAF scores, even when reliable and from acceptable medical sources, do not govern an ALJ's analysis." *Copes v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3487, 2013 WL 1809231, at *3 (D. Md. Apr. 26, 2013).  "The difficulty with assigning significant weight to GAF scores is the fact that those scores can be lowered by factors other than the pure severity of a claimant's mental impairments." *McGougan v. Comm'r, Soc. Sec.*, Civil Case No. JKB-13-52, 2014 WL 266807, at *2 n.3 (D. Md. Jan. 23, 2014).  Thus, "while nothing prohibits an ALJ from considering GAF scores as one component of a full analysis of the evidence of record, it is well established that GAF scores are not determinative of disability." *Campbell v. Comm'r, Soc. Sec.*, Civil Case No. 14-1331-GLR, 2015 WL 275746, at *4 (D. Md. Jan. 21, 2015); *see Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) ("[The claimant] complains that the mental RFC determination must be defective because she has been rated 45-50 on the [GAF] scale.  Even assuming GAF scores are determinative, the record supports a GAF in the high 40s to mid 50s, which would not preclude

her from having the mental capacity to hold at least some jobs in the national economy."). *But see Campbell v. Astrue*, 627 F.3d 299, 306-07 (7th Cir. 2010) ("An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability. . . . A GAF rating of 50 does not represent functioning within normal limits.  Nor does it support a conclusion that [the claimant] was mentally capable of sustaining work.").   Thus, Plaintiff's argument about the ALJ's failure to address her GAF scores of 50 also is unavailing.

Plaintiff also asserts that the ALJ erroneously assessed her subjective complaints.  Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."  R. at 20.  The Fourth Circuit recently has held that this language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'"  *Mascio v. Colvin*, __ F.3d __, No. 13-2088, 2015 WL 1219530, at *5 (4th Cir. Mar. 18, 2015) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (Posner, J.)).  Rather, the ALJ should compare the claimant's alleged functional limitations from pain to the other evidence in the record, not to the claimant's RFC. *See id.*  "[A] claimant's pain and residual functional capacity are not separate assessments to be compared with each other.  Rather, an ALJ is required to consider a claimant's pain as part of his analysis of residual functional capacity."  *Id.*

The ALJ found that Plaintiff "is less than credible with regard to her testimony and other statements about her medical condition."  R. at 20.  The ALJ found Plaintiff "less than credible" because she "testified at the hearing that she had no problems with taking the subway and bus to

get to the hearing" (R. at 22), which contradicted her statement in her function report that she did not like "being around people" (R. at 141).  In fact, however, Plaintiff did not testify that she had no problems with taking public transportation; rather, she testified that she did not "like being around all the people" when taking public transportation.  R. at 361.  Courts "have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ also found that Plaintiff's testimony that she "worked at places where she was in constant contact with people" belied her report that she did not like dealing with people.  R. at 22-23.  Plaintiff testified, however, that she was unable to remain employed because she was unable to stay on task while working.  R. at 367-68.  For example, Plaintiff testified that she worked as a customer service representative at a car rental company from April to June 2007, when she quit "because it was just stressful" and because she was not "able to keep up with the pace of the rental car place."  R. at 364-65.  "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007).  Evidence that a claimant tried to work and failed actually may support his allegations of disabling pain.  *See id.*  Further, the fact that Plaintiff worked as a barista for a manager who "let [Plaintiff] slide if [she] couldn't make it out of bed in the morning" (R. at 366) does not contradict her claim of disability.  *See Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) ("[The claimant] was able to work for [her employer] part-time only because he was a friend who tolerated frequent breaks and absences that an ordinary employer would have found unacceptable.  This does not

contradict her claim of disability."); *see Mosley v. Astrue*, 853 F. Supp. 2d 803, 817 (N.D. Iowa 2012).

Furthermore, the ALJ found that Plaintiff's activities of daily living as reported in her function report contradict her allegation of disabling limitations.  R. at 22.  As noted above, the ALJ found that, according to her function report, Plaintiff had been able to do the following from the alleged onset date of disability:

> get the children ready for school, cooks, does light household duties such as doing the laundry, ironing, and dusting[,] dress herself, bathes, cooks, watches television, and reads.  Additionally, [Plaintiff] reported that she was able to care for her personal needs.  [Plaintiff] noted that she was able to go [to] public places without having problems.  [Plaintiff] stated that she was able to understand and follow simple instructions.  The level or degree that [Plaintiff] was able to perform these activities contradicts [her] allegation of disabling limitations.

R. at 22.  As Plaintiff points out, however, she also reported that she woke up between 1 and 2 p.m. and napped during the day.  R. at 135.  She reportedly slept all day, rarely changed clothes, and ate and bathed when she felt like doing so.  R. at 136.  Plaintiff's mother made her get out of bed three times per week to bathe and also prepared a week's worth of food for her because Plaintiff "just [did] not feel up to it."  R. at 137.  Plaintiff also did no household chores.  R. at 137.  Plaintiff's mother stated similarly in her third-party function report.  R. at 166-74. "Nowhere, however, does the ALJ explain how he decided which of [Plaintiff's] statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [Plaintiff's] residual functional capacity."  *Mascio*, 2015 WL 1219530, at *6.  Thus, the ALJ's lack of explanation here requires remand.  *See id.*  Because the Court remands this case for further proceedings, the Court need not address Plaintiff's remaining arguments.  *See Riden-Franklin v.*

*Comm'r, Soc. Sec. Admin.*, Civil No. SAG-10-2298, 2013 WL 150012, at *2 (D. Md. Jan. 11, 2013).

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 20) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**.  Plaintiff's Alternative Motion for Remand (ECF No. 18) is **GRANTED**.  A separate order shall issue.


Date: March 24, 2015                                           _____/s/_____
                                                                                              Thomas M. DiGirolamo
                                                                                              United States Magistrate Judge